ELNATHAN STRONG *v.* SCEVY GARFIELD.

CALEDONIA,
*March,*
1838.

A contract *executed* cannot be dependent upon an *executory* contract.

Hence, where one of two parties executed an assignment, absolute in its terms, of a lease, and at the same time, gave a separate writing to surrender the possession on a future day, and the assignee, at the same time, contracted in writing with the assignor, to pay a sum of money on a day before the time of said stipulated surrender, it was *held*, that on the refusal of the assignor to surrender, according to his contract, the assignee might maintain ejectment for the premises, without having made such payment.

In an assignment, merely, of a leasehold estate, which is limited and defined by the original deed, an *habendum* is not necessary.

EJECTMENT, for lot No. 8, in the 10th range, in Hardwick. The facts in the case appear from the opinion of the court. The county court rendered judgment for the plaintiff, and the defendant excepted.

*W. Mattocks,* for defendant.

1. The assignment upon the lease does not convey any title. The only operative word, is "*assign.*" There is no *habendum,* nor words, designating what estate was intended to be conveyed. 2 Black. Com. 295, 298, 310. Our statute, p. 172, requires the same requisites in a lease for more than one year, as in common deeds. The usual words of a lease are,—"devise, grant and to farm let." 2 Black. Com. 317. The only difference between a lease and an assignment is, that a lease is of *part,* an assignment of the *whole* of the grantor's estate. Id. 317, 326.

2. The assignment of the lease, the plaintiff's writing to pay the back rents, and the defendant's to deliver the possession, all having the same date, are to be construed as one contract.

In deciding upon conditions *precedent,* courts will look for the intention of the parties, regarding the nature of the contract, and good sense of the case,—not regarding technical distinctions. 1 Saunders' Rep. 320, note 4. 1 T. R. 645. 7 do. 121, 126. Selw. N. P. 522, 523, 527. 4 T. R. 764. 2 Johns. R. 217. 7 T. R. 121. *Thorpe* v. *Thorpe,* 1 Ld. Raym. 662. 6 T. R. 668.

But if the title passed, the proper construction is, that it was to be *defeated,* on non-payment by plaintiff. Jac. L. D. "Condition," 3. 4. 3 Bl. Com. 154.

*E. Paddock*, and *B. N. Davis*, for plaintiff.

The assignment of the lease had no connection with the contract, but is wholly independent of it, neither is there any thing in the contract which goes to control the right of entry. And the defendant could have maintained an action on the contract immediately upon its falling due.

If the defendant had his election, to keep the possession or enforce the contract, by pleading the contract in offset, he has taken his election. But there is nothing in the whole transaction to show that the payment was to precede the right of entry.

The opinion of the Court was delivered by

PHELPS, J.—It appears that the defendant, Garfield, held the land in question, by virtue of a lease from the University of Vermont, for a term which is not specified in the bill of exceptions, but which we assume has not yet expired ; and, on the 17th day of September, 1836, assigned his term, by endorsement on his lease, to the plaintiff, Strong, by an assignment absolute, unconditional, and without reservation. At the same time, he undertakes, by a separate writing, to surrender the possession of the land to Strong, by the first of April following. This last writing, although on its face an undertaking by Garfield alone, is also signed by Strong, for the purpose, probably, of testifying his assent to the retention of possession until that date. On the same occasion, and as a part of the contract, Strong undertakes, by a writing on his part, to pay certain sums then due to the University for arrearages of rent, and also a further sum to the defendant, Garfield, to make up the full consideration of the assignment, which payments were to be made by the first day of Oct. A. D. 1838. It appears further, that neither party performed according to his undertaking,—but that the plaintiff neglected to make the stipulated payments, and the defendant refused to surrender the possession of the premises. The plaintiff brings this action of ejectment, and the defendant resists a recovery upon the ground, that the plaintiff's right of possession is dependent upon the payment by him of the consideration stated, as a condition precedent.

It would be absurd to hold an assignment, which is a contract executed, to be dependent upon a cotemporaneous

executory contract.   Such a contract may indeed be condi-
tional on the face of it, or may be defeated by matter *ex
post facto ;* but if it be absolute in its terms and take im-
mediate effect, it cannot, in the nature of things, be regar-
ded as contingent.   The doctrine of dependent and indepen-
dent covenants has no application to any other than exec-
utory contracts.   With respect to these, whether they are
dependent or independent, is often a matter of construction
and inference, depending upon the supposed intent of the
parties.   But in case of a contract executed, there is no
room for construction or inference, the question of intent
being settled by the execution itself.

In this case, the contract of sale is already executed, by
an assignment, absolute and unconditional in its terms.   How
then can we treat the contract of sale as conditional ; or
how can the party insist that the estate was to pass upon a
contingency only, when he has already completed the sale by
an absolute conveyance *in presenti ?*   This case is the same
in principle as it would have been, had the plaintiff executed
to the defendant his notes for the consideration of the as-
signment.   Suppose, then, A. executes to B. an absolute
conveyance of his estate, and B. in consideration thereof,
executes to A. his notes for the purchase money.   Does the
conveyance depend for its validity, or the title created by
it, upon the ultimate payment of the notes ?   If we were to
hold that it did, we should overturn the established law of
the state, and unsettle the title to perhaps half the property
in it.

If the assignment takes effect, it takes effect with all its
legal consequences, except so far as these consequences are
controlled by the express terms of the contract.   The right
of possession necessarily follows the conveyance of title, un-
less the right is expressly qualified or restricted.   There is
nothing, however, to control the legal effect of the assign-
ment in this case, except that the right of possession is re-
served by the defendant until the 1st of April, 1837, which
period expired before the commencement of the suit.

The plaintiff, therefore, is entitled to possession of the
demanded premises, by force of the assignment, and as a
necessary legal consequence.

It seems to have been supposed, however, that the plain-

tiff's right to the possession depended upon the contract of the defendant, to surrender possession, rather than the effect of the assignment. If we regard the subject in this light, then we have a case of promises, executory on both sides, and the question whether they are independent or dependent, may fairly arise. Upon this question, the intention of the parties, if it can be ascertained, is to be the pole-star of our decision. We are aware that many rules have been laid down on the subject, in their character, rather artificial and arbitrary. These rules, however, are intended for cases, where the intention of the parties is not apparent, but difficult to be ascertained. We need not resort to them, where that intention is readily and satisfactorily ascertained, from the contract itself.

Upon the inquiry as to the intent of the parties, the first consideration is, that upon the face of the contract there is not a word which indicates an intention, that the undertakings should be dependent. It was an easy matter to say, that possession should be delivered, *if the plaintiff performed.* In the next place, a certain day is fixed, upon which possession was to be delivered at all events. In this particular, the undertaking is absolute. And finally, if the defendant's undertaking was conditional and dependent upon the plaintiff's performance, it is impossible to conceive why an assignment of the term was made at all. Did the parties intend to convey the estate absolutely, and leave the consequent right of possession contingent and forever uncertain ? If we so hold, we must determine, that the condition precedent, not having been performed agreeably to the terms of the contract, the right of the plaintiff to the possession is forever gone. This court, at all events, can never dispense with strict compliance with the contract in this particular. Nor can we vacate the assignment, and restore the estate. The result is that the estate is forever gone from the defendant, by his assignment, but the fruits and consequences of the assignment can never be enjoyed by the plaintiff. Such a separation between the conveyance itself and its intended effect, certainly, was never designed by the parties ; nor can we bring it about, unless forced to it by the imperative terms of the contract.

A point has been made in the case, growing out of the form of the assignment. It is objected that the assignment contains no *habendum*, and is for this reason defective. Upon this point it is only necessary to observe, that the office of the *habendum*, in a conveyance, is to define the estate conveyed ; but in an assignment merely of a leasehold estate, which is limited and defined by the original deed, no such definition is required, and the *habendum* is not necessary.

Judgment affirmed.